# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### JANUARY SESSION, 1999

FILED

May 27, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9806-CC-00182 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | WILLIAMSON COUNTY |
| VS. | ) | |
| | ) | HON. HENRY DENMARK BELL |
| JOEL GUILDS, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Direct Appeal - DUI) |

FOR THE APPELLANT:

DAVID H. KING
KING, TURNBOW & BRISBY
203 Third Avenue South
Franklin, TN 37064

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

TIMOTHY BEHAN
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

JOE D. BAUGH, JR.
District Attorney General

JEFF BURKS
Assistant District Attorney
P. O. Box 937
Franklin, TN 37065-0937

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

On April 14, 1997, the Williamson County Grand Jury indicted Appellant Joel P. Guilds for driving under the influence of an intoxicant, second offense, and for driving on a revoked license. On October 15, 1997, Appellant filed a motion to have the two charges tried separately. The trial court initially denied the motion, but after Appellant's trial began on October 29, 1997, the trial court granted the motion to sever. Later that same day, a Williamson County jury convicted Appellant of driving under the influence of an intoxicant. On February 13, 1998, the trial court imposed a sentence of eleven months and twenty-nine days. Appellant challenges his conviction, raising the following issues:

> 1) whether Appellant was prejudiced by the late severance of the charges;
> 2) whether the trial court abused its discretion when it allowed a witness to testify who had not been disclosed to Appellant until the day of trial;
> 3) whether the evidence was sufficient to support Appellant's conviction; and
> 4) whether a comment by the prosecutor during closing argument constituted prosecutorial misconduct that deprived Appellant of a fair trial;

After a review of the record, we affirm the judgment of the trial court.

## I. FACTS

Officer Daniel Aloy of the Franklin, Tennessee Police Department testified that while he was responding to a call in downtown Franklin on February 13, 1997, he heard a loud crash. Aloy then turned around and saw that a car had struck a large flowerpot and a light pole a short distance away. When Aloy arrived at the scene, he saw that Appellant was in the driver's seat and was the only person in the car. Aloy then made contact with Appellant and observed that

Appellant had slurred speech, appeared to be only semi-conscious, and had difficulty answering questions.

Officer Frank Soto of the Franklin Police Department testified that he arrived at the accident soon after it occurred and he "took over the scene." Shortly after Soto approached Appellant, Soto recognized him because Soto had known Appellant for approximately five or six years. Soto smelled the odor of alcohol coming from both the inside of the car and from Appellant's person and he saw a beer can on the floor of the car. Soto also observed that Appellant had slurred speech and glassy, red eyes. Soto further observed that Appellant appeared to have a head injury and that the windshield of Appellant's car had been broken by what Soto guessed was probably Appellant's head.

Soto testified that shortly after he arrived at the scene, Appellant was transported to the hospital by some paramedics. Soto subsequently met Appellant at the hospital and asked him to take a blood alcohol test. When Appellant refused, Soto asked him whether he had been drinking. Appellant then responded, "You know me." Appellant then stated that he had fallen asleep while he was driving his vehicle.

Soto testified that he did not ask Appellant to take a breath test for alcohol because the breathalyser was at the Williamson County Jail and Appellant could not be transported there because of his medical condition. Soto also testified that he did not have Appellant perform any field sobriety tests because Appellant was injured. Soto admitted that he could not be sure whether Appellant's slurred speech and behavior were due to intoxication or to injury.

-3-

Nancy Steagal testified that she was one of the paramedics who treated Appellant at the scene of the accident. When Steagal made contact with Appellant, he complained of pain in his back, neck, wrist, and knee. Steagal observed that Appellant's words were not plain and sounded "sluggish." Steagal also noticed that an odor of alcohol was coming from the car and the odor became stronger when she approached Appellant. Steagal also testified that Appellant was awake, alert, and oriented; he denied drinking alcohol and stated that he had fallen asleep at the wheel.

Doctor Paul Hagan testified that he was the emergency room physician who treated Appellant when Appellant was brought to the hospital. When Dr. Hagan made contact with Appellant, Appellant complained of pain in his cheek, jaw, left knee, and right arm. Other than the pain in his cheek and jaw, Appellant made no other complaint of any head injury. Dr. Hagan observed that Appellant had a strong odor of alcohol on his person and had slurred speech and other symptoms of intoxication such as nystagmus of the eyes.

Dr. Hagan testified that the radiology report indicated that Appellant had suffered an injury to the head. Dr. Hagan then acknowledged that nystagmus could be caused by a head injury, but he stated that he had never seen the type of nystagmus that Appellant had in a head injury case. Dr. Hagan stated that in his opinion, a patient with nystagmus similar to that of Appellant would usually be unconscious.

## II. SEVERANCE

Appellant contends that he was prejudiced by the late severance of the charge for driving under the influence from the charge for driving on a revoked license. We find otherwise.

The record indicates that after the trial court informed the jury about the nature of the case, a jury-out hearing was conducted. During this hearing, the court granted Appellant's motion to sever the two charges. When the jury returned, the court instructed the jury that this case only involved a charge for driving under the influence. The court further instructed the jury that they should disregard the second charge.

We conclude that Appellant has failed to show that he was prejudiced by the late severance of the charges. The record indicates that the charges were severed before any evidence was introduced about the charge of driving on a revoked license. Further, the trial court clearly instructed the jury that it should only be concerned with the charge of driving under the influence and it should disregard the other charge. "It is well-established that jurors are presumed to follow the instructions given by the trial judge." State v. Cribbs, 967 S.W.2d 773, 784 (Tenn. 1998). See also State v. Mathis, 969 S.W.2d 418, 422 (Tenn. Crim. App. 1997). This issue has no merit.[1]

---

[1]However, we do caution trial courts that motions to sever offenses for trial should be resolved prior to the commencement of trial and the impanelling of the jury.

## III. UNDISCLOSED WITNESS

Appellant contends that the trial court abused its discretion when it allowed a witness to testify who had not been disclosed to the defense until the day of trial. We again must disagree.

The record indicates that the State failed to include Nancy Steagal's name on the indictment as required by Tennessee Code Annotated section 40-17-106, which provides:

> It is the duty of the district attorney general to endorse on each indictment or presentment, at the term at which the same is found, the names of such witnesses as the district attorney general intends shall be summoned in the cause, and sign such indictment or presentment name thereto.

Tenn. Code Ann. 40-17-106 (1997). However, it is well-established that the duty created by this statute is merely directory, not mandatory. State v. Harris, 839 S.W.2d 54, 69 (Tenn. 1992); State v. Kendricks, 947 S.W.2d 875, 947 (Tenn. Crim. App. 1996). The State's failure to include a witness' name on the indictment will not automatically disqualify the witness from testifying. Harris, 839 S.W.2d at 69; Kendricks, 947 S.W.2d at 947. Rather, a defendant will be entitled to relief for nondisclosure only if he or she can demonstrate prejudice, bad faith, or undue advantage. Harris, 839 S.W.2d at 69; Kendricks, 947 S.W.2d at 947. The determination of whether to allow the witness to testify is left to the sound discretion of the trial court. Kendricks, 947 S.W.2d at 947; State v. Underwood, 669 S.W.2d 700, 703 (Tenn. Crim. App. 1984).

Here, Appellant has not even alleged that the State acted in bad faith or had an undue advantage because of the failure to disclose Steagal's identity until

the day of trial. Indeed, neither of these allegations would be supported by the record. Further, although Appellant complains that he was "completely surprised" by Steagal's presence as a witness, he has failed to indicate how he was prejudiced by that surprise. Indeed, the record indicates that when Appellant's counsel informed the trial court that he had not previously been notified that Steagal would be a witness, the court gave him an opportunity to interview Steagal before she testified and he took advantage of that opportunity. Further, Appellant's counsel subsequently conducted a very able cross-examination of Steagal. In this case, Appellant has simply failed to indicate anything that he could or would have done differently if he had known about Steagal earlier. This issue has no merit.

## IV. SUFFICIENCY OF THE EVIDENCE

Appellant contends that the evidence was insufficient to support his conviction for driving under the influence of an intoxicant. We disagree.

When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id. On appeal, "the

[S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Finally, Rule 13(e) of the Tennessee Rules of Appellate Procedure provides, "findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact beyond a reasonable doubt."

In order to establish that Appellant had committed the offense at issue here, the State was required to prove that Appellant drove his vehicle on a public street while he was "[u]nder the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system." Tenn. Code Ann. § 55-10-401(a)(1) (1998). Appellant concedes that the State proved that he operated his vehicle on a public street. However, Appellant contends that the State did not prove that he was under the influence of an intoxicant (alcohol) when he did so.

Appellant basically argues that because the case is circumstantial, the jury could not have found that the facts presented excluded every other reasonable theory or hypothesis except that of guilt. Specifically, Appellant argues that the jury could have accepted his theory that his slurred speech and nystagmus were actually caused by his head injury rather than intoxication. It is true that where the evidence is entirely circumstantial, the evidence must allow the jury to exclude every other reasonable theory or hypothesis except that of guilt. State v. Ball, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998). Of course, "[l]ike all other fact questions, the determination of whether all reasonable theories or hypotheses are excluded by the evidence is primarily a jury question." Id.

We conclude that the evidence, when viewed in the light most favorable to the State, was sufficient for a rational jury to exclude Appellant's theory and find beyond a reasonable doubt that Appellant had committed the offense of driving under the influence of an intoxicant. The evidence showed that Appellant was involved in a single vehicle accident in which he drove his car off the road and into a flowerpot and light pole. Further, Soto testified that he found a beer can in Appellant's car. Soto and Steagal both testified that there was an odor of alcohol coming from Appellant's car. Soto, Steagal, and Hagan all testified that they could smell alcohol on Appellant's person. Aloy, Soto, Hagan, and Steagal all described Appellant's speech as either slurred or sluggish and Aloy testified that Appellant was only semi-conscious and had difficulty answering questions. Soto testified that Appellant had red, glassy eyes. Dr. Hagan testified that Appellant had nystagmus of the eyes, which was consistent with intoxication. Although Dr. Hagan testified that nystagmus could be caused by a head injury, he also testified that Appellant's head injuries did not appear to be serious and

further, he had never seen Appellant's type of nystagmus in a head injury case. Dr. Hagan also stated that someone with Appellant's type of nystagmus would usually be unconscious. When Soto asked Appellant to take a blood alcohol test, Appellant refused. Finally, when Soto asked Appellant whether he had been drinking, Appellant responded, "You know me."

In this case, Appellant essentially asks us to reconsider the evidence and substitute a verdict of not guilty in exchange for the verdict found by the jury. That is not our function. Instead, we conclude that a rational jury could have found beyond a reasonable doubt that Appellant had committed the offense of driving under the influence of an intoxicant. See Tenn. R. App. P. 13(e). This issue has no merit.

## V. PROSECUTORIAL MISCONDUCT

Appellant contends that he was denied a fair trial when the prosecutor referred to him as a "clown" during his closing argument. We disagree.

The record indicates that during his closing argument, the prosecutor made the following comment:

> Now we can talk all day about what evidence is circumstantial and what's direct. I submit that there is a great deal of direct evidence. The officers saw the accident. They're standing right across the street from it when this clown, driving and saying that he went to sleep, drives right into a lamp post at 1:30 or so in the morning and then states, although everyone who testified smelled alcohol, that he hadn't been drinking. And he refuses a test.

While we agree with Appellant that the reference to him as a "clown" was undoubtably improper, we conclude that Appellant is not entitled to a new trial because of it.

"Where argument is found to be improper the established test for determining whether there is reversible error is whether the improper conduct could have affected the verdict to the prejudice of the defendant." State v. Cauthern, 967 S.W.2d 726, 737 (Tenn. 1998) (citation and internal quotations omitted). There are five factors that must be examined in order to make this determination: 1) the conduct complained of, viewed in light of the facts and circumstances of the case; 2) the curative measures undertaken by the court and the prosecution; 3) the intent of the prosecutor in making the improper statement; 4) the cumulative effect of the improper conduct and any other errors in the record; and 5) the relative strength or weakness of the case. Id. (citations omitted).

Initially, we note that Appellant waived this issue by filing to make a contemporaneous objection at trial. State v. Keen, 926 S.W.2d 727, 736 (Tenn. 1994); State v. Green, 947 S.W.2d 186, 188 (Tenn. Crim. App. 1997); State v. Little, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992). However, we conclude that Appellant is not entitled to relief even on the merits. First, the conduct complained of, when viewed in light of the facts and circumstances of the case, indicates that the jury would not have been prejudiced by the use of the term "clown." The prosecutor's use of the term "clown" was only an isolated incident and it was far less inflammatory than other comments that the Tennessee Supreme Court has found to be harmless error. See Cauthern, 967 S.W.2d at

736–38 (prosecutor's reference to defendant as "the evil one" was harmless error); State v. Bates, 804 S.W.2d 868, 881 (Tenn. 1991) (prosecutor's two references to defendant as a "rabid dog" were harmless errors); State v. Miller, 771 S.W.2d 401, 405 (Tenn. 1989) (prosecutor's reference to defendant as "perverted" was harmless error).  Second, although no curative measures were taken by the trial court or the prosecution, this was primarily because the defense failed to object.  Third, it appears that the intent of the prosecutor was to point out the inconsistencies between the defense theory of the case and the evidence that was presented at trial.  Fourth, the cumulative effect of this error and any other errors was not sufficient to deny Appellant a fair trial.  Fifth, the State's case was fairly strong.  Under these circumstances, we conclude that the prosecutor's improper comment did not affect the verdict to the prejudice of the defendant. This issue has no merit.

Accordingly, the judgment of the trial court is AFFIRMED.


_____
JERRY L. SMITH, JUDGE


CONCUR:


_____
JOHN H. PEAY, JUDGE


_____
DAVID H. WELLES, JUDGE