# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs November 23, 2010

## STATE OF TENNESSEE v. MEAGAN N. REID

### Direct Appeal from the Criminal Court for Campbell County
### No. 14280    E. Shayne Sexton, Judge

### No. E2010-01149-CCA-R3-CD - Filed July 21, 2011

A Campbell County Criminal Court Jury found the appellant, Meagan N. Reid, guilty of driving under the influence (DUI), third offense; possession of a Schedule II controlled substance; and a violation of the implied consent law.  The trial court imposed a total effective sentence of eleven months and twenty-nine days, 125 days of which were to be served in the county jail with the remainder to be served on probation.  On appeal, the appellant challenges the sufficiency of the evidence underlying her possession of a controlled substance conviction and the propriety of the State's cross-examination regarding a prior conviction for DUI.  Finding no reversible error, we affirm the judgments of the trial court, but we remand for entry of a corrected judgment regarding the appellant's violation of the implied consent law.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed; Case Remanded.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and D. KELLY THOMAS, JR., JJ., joined.

Charles Herman, LaFollette, Tennessee, for the appellant, Meagan N. Reid.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; William Paul Phillips, District Attorney General; and La Tasha Wassom, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The appellant was indicted for DUI, driving on a revoked license, a violation of the implied consent law, unlawful possession of Oxycodone, evading arrest, and assault. At trial, LaFollette Police Officer Daniel Terry testified that around 1:00 p.m. on April 19, 2009, he was dispatched to Murphy's gas station in response to a complaint. When he arrived at the gas station, the appellant's vehicle was blocked by a vehicle that was driven by the complainant. The complainant left after speaking with Officer Terry. At that point, Officer Terry approached the appellant's vehicle. He noticed that the engine was running and that the windows were up. The appellant, who was alone in the vehicle, had her head down and appeared to be asleep. Officer Terry knocked on the window, and the appellant woke up. At the officer's request, she rolled down her window.

Officer Terry asked the appellant for her driver's license. She told him that she had left it at home because she had planned to be gone only a few minutes. Officer Terry stated that although he did not smell any alcohol on the appellant, he asked her to exit the vehicle. Because it was raining, Officer Terry asked the appellant to step under the store's awning. Officer Terry said the appellant had trouble standing and held the side of the vehicle as she was walking. He described the appellant's gait as slow, "kind of off step."

Officer Terry obtained the appellant's name and date of birth then called dispatch to check the status of her driver's license. He asked the appellant if she was taking any medication, and she responded that she was not. Officer Terry said that during the conversation, the appellant would at times become more alert "then she would nod back off again."

To determine the appellant's ability to operate the vehicle, Officer Terry asked her to perform some field sobriety tests. He had the appellant perform the "walk and turn" test, but he could not recall how she performed. He also had the appellant perform the "one-leg stand" test, which she performed unsatisfactorily. Specifically, he noted that "[s]he was swaying while she was holding her foot up off the ground and she raised her arms a couple times."

After the field sobriety tests, Officer Terry asked the appellant "if she had anything on her person that was illegal, any type of drugs, and she said she did not." Officer Terry then asked the appellant to empty her pockets. He said the appellant put both hands in her pockets. When she withdrew her hands, she opened her left hand but kept her right hand closed. Around that time, Officer Jason Marlow arrived on the scene as "backup." Officer Terry told Officer Marlow that the appellant was concealing something in her hand. Officer Marlow recovered from the appellant's hand "half of a light blue pill." He gave the pill to Officer Terry, who put it into an evidence bag. Officer Terry put the bag on the front passenger seat of his patrol car.

-2-

The appellant was arrested, handcuffed with her hands behind her back, and placed in the back of Officer Terry's patrol car. While they waited on a tow truck, the appellant began to cry and told Officer Terry that the handcuffs hurt her wrists. Because of the appellant's complaints, her handcuffs were loosened, and she was cuffed with her hands in front of her body. Officer Terry asked the appellant if she would submit to a "chemical test" to determine whether there were any drugs or alcohol in her system. The appellant agreed to take the test.

After the tow truck arrived, Officer Terry transported the appellant to St. Mary's Hospital for a blood test. So they could talk, he slid open the Plexiglass partition that separated the front and back of the patrol car. When they arrived at the hospital, Officer Terry walked to the back of the patrol car to get the appellant. The appellant's handcuffs were in the back seat, and the appellant was "halfway through" the partition, reaching for the evidence bag containing the blue pill. Officer Terry said that he was surprised because no one had ever gone through the partition. Officer Terry said he and the appellant fought and "scuffl[ed]" as he tried to get her out of the car. The appellant dug her fingernails into Officer Terry's hand, forcing him to release the evidence bag. The appellant then put the bag in her mouth and tried to bite through the plastic to get the pill.

Officer Terry called for backup, and once again Officer Marlow arrived to assist. As Officer Marlow tried to help get the appellant out of the car, the appellant bit Officer Terry. After the two officers got the appellant out of the patrol car, they took the bag from her, put her on the ground, and cuffed her hands behind her back. The appellant screamed "[t]hat she needed her medication – she needed to take her medication." Officer Terry said that the appellant had "basically demolished" the evidence bag and that he had to put the pill and torn bag into a new evidence bag.

Officer Terry said that when the appellant calmed, he asked her if she would submit to a blood test. The appellant refused and signed an implied consent form, stating that she would not submit to a blood test. Officer Terry put the appellant back in the patrol car and took her to jail. He later sent the pill he retrieved from the appellant to the Tennessee Bureau of Investigation (TBI) crime laboratory. Based upon his training, Officer Terry determined, after observing the appellant's performance on the field sobriety tests and "her actions . . . stumbling around, slurred speech and so on," that she was unable to safely operate a motor vehicle.

LaFollette Police Officer Jason Marlow testified that on April 19, 2009, he went to Murphy's gas station to back up Officer Terry. When he arrived, Officer Terry and the appellant were standing on the sidewalk under the store's awning. As he approached, Officer Terry told him that the appellant was hiding something in her right hand. Officer Marlow

pried the appellant's fingers open and recovered a blue pill. Officer Marlow relinquished the pill to Officer Terry. After discovering the pill, the officers placed the appellant under arrest. Officer Marlow cuffed the appellant's hands behind her back then left to resume his patrol duties.

Officer Marlow said that a few minutes later, Officer Terry requested backup at St. Mary's Hospital. When Officer Marlow arrived, Officer Terry was trying to get the appellant out of the back of his patrol car. As he struggled with the appellant, Officer Terry told Officer Marlow that she had the blue pill that was taken from her earlier. Officer Marlow helped Officer Terry get the appellant out of the car. Officer Marlow recalled that the appellant was "pretty combative." Officer Marlow saw the appellant clench the evidence bag in her mouth and try to tear the bag open. Officer Marlow said that the officers put the appellant on the "ground to keep her from harming us or harming herself."

Officer Marlow stated that fifteen or twenty seconds later, after the officers threatened to use chemical spray, the appellant calmed. The officers cuffed the appellant's hands behind her back and assisted her to her feet. The appellant was crying and upset. She told the officers that "she wanted the tablet back, that she had to have it." Officer Terry took the appellant into the hospital, and Officer Marlow left.

Officer Marlow, from his experience in witnessing people impaired by drugs or alcohol, opined that the appellant "was impaired from some type of narcotic that would heighten her senses to the point to where she wanted to have an altercation, she was very upset, . . . she wasn't really coherent, . . . she was real unsteady on her feet."

The parties stipulated that Sharon A. Norman, a TBI forensic scientist, tested the blue tablet retrieved from the appellant and determined it was Oxycodone, a Schedule II controlled substance. After the stipulation was read into the record, the State rested its case-in-chief. Defense counsel made a motion for a judgment of acquittal. Finding that the State had presented no proof regarding the appellant's driving on a revoked license, the trial court dismissed that count. However, the court found that there was sufficient evidence to submit the other charges to the jury.

The appellant testified that she was twenty-nine years old, had a bachelor's degree, and had a seven-year-old daughter. She stated that on April 19, 2009, she was living in Jacksboro with a friend who lived behind Riggs Drugstore. The appellant said that she had a prescription for Oxycodone, which she had taken for approximately five years because of pain in her legs, wrists, and ankles due to cheerleading and gymnastics. She stated that she had not taken an Oxycodone pill on April 19, but she had taken a pill before going to bed the night before.

-4-

At around 1:00 p.m., the appellant drove one or two miles to Murphy's gas station for cigarettes. The appellant said that she did not have trouble driving. She denied that she was in her car asleep when she was approached by Officer Terry; she stated that, instead, he approached her as she came out of the store. Officer Terry asked her to step under the awning to perform field sobriety tests. She said that she felt she correctly performed the field sobriety tests. She stated that if she limped or if her "gait" was slow when she walked, it was because her ankle was "bothering [her] that day."

The appellant said that after she completed the field sobriety tests, Officer Terry asked her to empty her pockets. She thought her pockets were empty, but inside her pocket she found half an Oxycodone pill. She acknowledged that she tried to hide the pill but explained that she did so because "you're supposed to have that medication in a bottle." She said she gave the pill to Officer Marlow when he discovered it. The appellant asked Officer Terry if she could take a breathalyzer. Officer Terry said no but told her that she could take a blood test. After she agreed, he took her to the hospital. The appellant said that initially her hands were cuffed behind her back, but, after she complained that the cuffs were too tight, Officer Terry cuffed her hands in front of her.

The appellant said that on the way to the hospital, Officer Terry opened the glass partition separating the front and back of the patrol car so they could talk. The appellant said Officer Terry was trying to calm her because she was upset about her arrest.

When they arrived at the hospital, the appellant changed her mind about taking the blood test. She said that she did not feel she had done anything wrong and that Officer Terry led her to believe she could be charged with DUI if she had taken any of her prescription medication. She stated that she did not recall seeing Officer Marlow at the hospital. She denied that she attempted to crawl through the window, grabbed the pill bag, or scuffled with the officers.

The appellant said she had a prescription for Oxycodone. As proof, she produced a bottle of Oxycodone which had been prescribed for her. She acknowledged that the date on the bottle was after April 19, 2009. She said that she could not find a bottle that was filled before April 19 because she threw the bottles away when they were empty. She stated that she had driven on other occasions after taking the prescribed dosage of her "medication" without any "ill effects or adversary effects." She said that the side effects of the medication went away after she had been taking it for one month.

On cross-examination, the appellant said that she told the officers she had a prescription for the Oxycodone pill. When asked if she had been prescribed any other

medication, the appellant said she took Xanax. She acknowledged that she had taken a Xanax pill the previous night.

The appellant said that she did not realize until the night before trial that she did not have a "printout" of her prescriptions. She said she was unable to get to the pharmacy before trial. The appellant also affirmed her statement that her medications had never adversely affected her driving. Over defense counsel's objection, the State was allowed to ask the appellant about an accident she had in 2008 after she had taken Xanax. The appellant asserted that she had an automobile accident while she was lighting her cigarette and that she was asked to "do a sobriety test." The appellant said she did not believe her medication was the cause of the accident and opined that she was not "a good driver." The State then asked, "But you ended up pleading guilty to it. You didn't fight that, did you?" The appellant responded that she pled guilty because she was facing forty-eight hours or forty-five days in jail.

Based upon the foregoing, the jury found the appellant guilty of DUI, possession of a Schedule II controlled substance, and a violation of the implied consent law. The appellant was found not guilty of evading arrest and assault. The appellant admitted to the court that she had two prior DUI convictions, thereby stipulating that the instant DUI conviction was a third offense. The trial court fined the appellant $1,100 and sentenced her to eleven months and twenty-nine days for the DUI conviction and ordered the appellant to serve 125 days in the county jail before being released on probation. The trial court also imposed a concurrent sentence of eleven months and twenty-nine days for the drug possession conviction and ordered the appellant to pay a $750 fine. On appeal, the appellant challenges the sufficiency of the evidence of the possession of a controlled substance conviction and the propriety of the State's cross-examination regarding her prior DUI conviction.

## II. Analysis

### A. Impeachment

First, we will address the appellant's complaint that the trial court erred in allowing the appellant to be cross-examined regarding a prior driving under the influence conviction. During cross-examination of the appellant, the State requested a jury out hearing. The State asked the trial court for permission to question the appellant about her 2008 conviction for DUI, asserting that the appellant had "opened the door." The State said:

> The lab report came back showing they are prescription type drugs. The one specific to me is the Diazepam, which she testified that she's been prescribed Xanax and had that for some

time, taking that now, and she entered a guilty plea as to driving under the influence . . . of drugs.

Defense counsel objected, arguing that "there is no evidence that this one was Xanax or Valium. She talked about Oxycodone." He insisted that the appellant did not "open[] the door" to evidence of her prior conviction. The State responded that the appellant made her prior conviction relevant when she testified that she had previously driven while on prescription medication and that the medication had no ill effects on her driving.

The court opined that the question was a "tough call." The court stated that although the appellant opened the door to evidence of the prior conviction, the court was concerned about its prejudicial effect on the jury.

Initially, the trial court ruled that the State could not ask the appellant if she had a prior DUI conviction; however, the court stated that it would allow the State "some deference in developing whether or not she has driven [while on medication] for the purpose of examining her opinion about her ability to drive [while on medication]." Nevertheless, after further argument, the court decided to allow the State to question the appellant about the prior DUI. The court observed, "This is a credibility case. We're talking about officers who have testified to one thing and this witness testifying exactly opposite." The court stated that it would give a limiting instruction, informing the jury that the prior conviction was to be used solely for impeachment purposes.

Following the trial court's ruling, the following colloquy occurred:

> [The State:] [Y]ou . . . testified that you've driven before on your prescription medications and that it never had any ill effects on your driving. That's not completely true, is it?
>
> [The appellant:] I don't feel it was the medication that was the cause.
>
> [The State:] You don't feel the medication was the cause of what?
>
> [The appellant:] I had an accident.
>
> [The State:] Okay. And when did you have that accident?
>
> [The appellant:] In – it was July of 2008, or something like that.

[The State:]  How about April 13th of 2008?

[The appellant:]  Okay.

[The State:]  Okay.  And you were on your prescribed medication at that time?

[The appellant:]  No.  Actually, if you look at my blood test, I was out of my medication at that – I had gotten it stolen that – from that month. . . .  I had gotten [the medication] stolen from me that month.

[The State:]  Okay.  But you were taking some type of medication?

[The appellant:]  If my blood tests just – I still had my Xanax that I took the night before and it showed up.

[The State:]  So you took the Xanax the night before the accident on April 13th of '08, and you had an accident on that day and –

[The appellant:]  But I was lighting my cigarette.  I never said I was a good driver.  I was lighting my cigarette and hit something.  And when I hit, I hit the steering wheel so hard when I wrecked that my eye was out to here . . . , and they had – they pulled me out.  I blacked out.  The officers pulled me out of the car, and I was still – you know, wasn't really awake, and they had me to do a sobriety test and, you know, I just – I couldn't even see straight.

[The State:]  Okay.  But you ended up pleading guilty to it.  You didn't –

[The appellant:]  Yeah.

[The State:]  – fight that, did you?

[The appellant:]  I pled guilty because I was – it was – it's looking at 48 hours in jail or 45 days in jail.  What would you take – a chance when you've got –

[The State:]  So your testimony that you've never had any – it's never had any ill effects on your driving, that's not completely accurate, is it?

[The appellant:]  I guess not.

[The State:]  Okay.

[The appellant:]  Not having it had ill effects on it.  I just think I – I don't – I don't think I'm a good driver.

On appeal, the appellant argues that the prior conviction was inadmissible under Tennessee Rule of Evidence 609 because the prior DUI conviction was not a felony, did not involve dishonesty or moral turpitude, and was overly prejudicial.  Additionally, she contends that the State should not have been allowed to use the prior conviction, which she claims was based upon her use of Valium, because "Valium and Oxycodone are not the same drugs."

Initially, we note that the trial court did not allow the appellant's prior DUI conviction to be admitted under Rule 609.  Instead, the trial court ruled that the State could question the appellant regarding the prior DUI conviction because she had "opened the door" by testifying that she had driven before while on prescription medication without ill effects.  As a leading treatise has explained, "[i]rrespective of admissibility under  [Tennessee Rule of Evidence] 609, a conviction may be used to contradict a witness who 'opens the door' and testifies on direct examination that he or she has never been convicted of a crime, or to counter some other facet of direct testimony."  Neil P. Cohen et al., Tennessee Law of Evidence § 6.09[2][b] (LEXIS publishing, 5th ed. 2005); see also State v. Kendricks, 947 S.W.2d 875, 883 (Tenn. Crim. App. 1996) (stating that the State may question a defendant regarding a prior conviction to show that his "testimony on direct [was] less than forthright").  We agree with the trial court that the State was entitled to impeach the appellant's testimony that she had never had problems driving while on medication.

However, we conclude that the State's questions regarding her guilty plea to DUI were not appropriate.  The State could, and did, elicit testimony from the appellant that she had been involved in an automobile accident after taking medication, contrary to her claim that her driving was not affected by taking medication.  Once the appellant's testimony was impeached in this manner, there was no need to question her about her guilty plea.  Because

-9-

the prior DUI concerned the same offense for which the appellant was on trial, its probative value was substantially outweighed by unfair prejudice. Tenn. R. Evid. 403; see also State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999) (stating that the risk of convicting a defendant based upon propensity "greatly increases if the impeaching conviction is substantially similar to the crime for which the defendant is being tried"). Therefore, we conclude that eliciting testimony about the appellant's prior DUI conviction was error. However, such error may be considered harmless if it did not "'affirmatively appear to have affected the result of the trial on its merits.'" State v. Dotson, 254 S.W.3d 378, 388 (Tenn. 2008) (quoting Tenn. R. Crim. P. 52(a)); see also Tenn. R. App. P. 36(b).

In examining the effect of the error, we note that Officer Terry testified that the appellant was asleep in the car when he first approached and that she could not stay alert. Officer Marlow stated that the appellant was not coherent. Both officers asserted that the appellant was unsteady on her feet. After the blue pill was discovered, the appellant's behavior became exceedingly erratic. She repeatedly screamed that she needed the pill and went to extreme and violent lengths to retrieve it. Officer Marlow opined that the appellant's actions indicated that she was under the influence of "some type of narcotic." Given the strength of the State's case against the appellant, we conclude that the error in eliciting proof of the appellant's prior DUI conviction was harmless.

## B. Sufficiency of the Evidence

The appellant next argues that the evidence is insufficient to establish her guilt of possession of a controlled substance. On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

Tennessee Code Annotated section 39-17-418(a) provides that "[i]t is an offense for a person to knowingly possess or casually exchange a controlled substance, unless the

substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice." Oxycodone is a Schedule II controlled substance. Tenn. Code Ann. § 39-17-408(b)(1)(O).

The appellant does not dispute that she possessed the Oxycodone pill nor does she dispute that Oxycodone is a controlled substance. Instead, she contends that she had a valid prescription for the Oxycodone. Although the appellant testified that she had a prescription for Oxycodone, there was no evidence adduced at trial supporting her claim. The pill bottle the appellant presented at trial reflected that a prescription for Oxycodone was issued *after* the appellant was arrested in the instant case. Obviously, the jury, as was its prerogative, chose not to accredit the appellant's testimony that she had a valid prescription for Oxycodone at the time of her arrest. Therefore, we conclude that there was sufficient evidence to support the appellant's conviction for possession of a controlled substance.

## C. Implied Consent

We note that the trial court entered a judgment reflecting that the violation of the implied consent law was dismissed or disposed of by nolle prosequi. The record clearly reflects that the appellant was found to have violated the implied consent law. See Tenn. Code Ann. § 55-10-406. Accordingly, we must remand this case for entry of a judgment reflecting that the appellant violated the implied consent law.

## III.  Conclusion

In sum, we conclude that the evidence was sufficient to sustain the appellant's DUI and possession of a controlled substance convictions. We further conclude that the trial court erred by allowing the State to question the appellant regarding her prior DUI conviction; however, the error was harmless. The case is remanded to the trial court for entry of a corrected judgment reflecting that the appellant violated the implied consent law.

_____
NORMA McGEE OGLE, JUDGE