# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
September 24, 2002 Session

## STATE OF TENNESSEE v. MARK E. CONNER

**Appeal from the Criminal Court for Cumberland County**
**No. 6148A     Leon Burns, Jr., Judge**

---

**No. E2002-00038-CCA-R3-CD**
**December 6, 2002**

---

The Defendant, Mark E. Conner, was convicted by a jury of attempting to manufacture methamphetamine, a Class D felony. In this appeal as of right, the Defendant argues four issues: (1) whether the evidence was sufficient to sustain his conviction, (2) whether the trial court erred by denying the Defendant's motion to exclude the testimony of witnesses Sherri Conner, the Defendant's wife and former co-defendant, and Gloria Whitehead, the Defendant's mother-in-law, (3) whether the trial court erred by denying the Defendant's motion to require the State to provide the Defendant with any statement, arrest history, and prior convictions of the State's witnesses, and (4) whether the trial court erred by denying the Defendant's motion to exclude the State's photographs and the Defendant's request to introduce at trial the remaining photographs that were provided to the Defendant during discovery. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Margaret Jane Powers, Crossville, Tennessee, for the appellant, Mark E. Conner.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; Bill Gibson, District Attorney General; and Terry D. Dycus, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant, Mark Conner, and his wife, Sherri Conner, were charged in a single indictment with one count of manufacturing methamphetamine, a Schedule II controlled substance. On September 5, 2001, the Defendant was tried before a jury on the amended charge of attempt to

manufacture methamphetamine, and the jury found him guilty of that charge.[1] He was sentenced as a Range I, standard offender to three years, six months, suspended after serving six months. This appeal followed.

On August 21, 2000, officers with the Crossville Police Department went to the Defendant's residence to serve him with a domestic assault warrant. Neither the Defendant nor his wife was at the residence. However, the police did find a man named Bryan Elmore at the house. Elmore's truck was parked outside the house, and in the truck the police found a "hot plate" and a bag full of chemicals that are associated with the production of methamphetamine. Based upon what they found in Elmore's truck, the police located Sherri Conner and received consent to search the residence that she shared with the Defendant. Inside the house, the officers found cans of carburetor cleaner, a bag containing several packages of antihistamine tablets and matches, and a bowl containing a white waxy substance. The officers also searched a shed behind the house. There they found fourteen bags of garbage, three fifty-five gallon drums full of matchbooks missing their striker plates, cans of chemicals, including liquid heat, carburetor cleaner, muriatic acid, acetone, and aerosol cans with tubing attached. When the officers opened one of the garbage bags, a yellow cloud emerged from the bag.

Detective Mark Rosser was called to the scene due to his training regarding the seizure of methamphetamine laboratories. He testified that he found several burn piles in the Defendant's yard that contained aerosol cans, glass bottles, and plastic tubing. A burned glass coffee pot was in one of the burn piles.

Billy Joe Mundy, Jr., an agent with the Federal Drug Enforcement Administration, described how methamphetamine is manufactured. The basic ingredients needed to make methamphetamine using the "ephedrine reduction method" are ephedrine, red phosphorous, and iodine crystals. Ephedrine may be extracted from antihistamine tablets by mixing the tablets into a solvent, such as acetone or ether. Products such as carburetor cleaner or fuel-line antifreeze contain these kinds of solvents. Red phosphorous is found in the striker plates of matchbooks. Agent Mundy explained that several products will be present at a methamphetamine laboratory, including bottles of some product containing acetone, thousands of matches, some form of iodine, hydrogen peroxide, muriatic acid, and some sort of a "gasser," which is used to convert the methamphetamine oil into powder. When describing the types of gassers that people use, Mundy said, "A lot of people in this area were taught to manufacture in a whistler coffee pot . . . it's a telltale sign in this area that they actually manufacture in a whistler coffee pot." Agent Mundy also stated that burn piles are common in areas near methamphetamine labs, as the manufacturers must dispose of large amounts of waste.

The Defendant's wife, Sherri Conner, testified that she moved out of their residence on August 18, 2000, because of an argument she had with the Defendant. Her mother, Gloria Whitehead, testified that Ms. Conner came to live with her a few days before August 21, 2000. Ms. Conner returned to the house she shared with the Defendant on August 19 and 20, 2000, to find the

---

[1]The State dismissed the charge against Sherri Conner.

Defendant and retrieve some of her belongings. She testified that, on those dates, none of the chemicals or other items that the police found in the house or shed on August 21 were present. She explained the burn piles in the yard by saying that when she and the Defendant moved into the house, the yard was full of debris. Therefore the Defendant gathered up all the trash in the yard, which consisted of spray cans and bottles, and burned it. Ms. Conner testified that about a week after the police discovered the methamphetamine lab at her house, she and the Defendant and her daughter left Tennessee due to problems with their extended families and went to Mississippi and Arkansas. They returned in January 2001 because her ex-husband had filed for temporary emergency custody of her daughter.

The Defendant testified that he left his home on August 18, 2000, as a result of an argument with his wife. On that date, none of the materials that the police found on August 21 were there. He explained that there were burn piles in the yard where he had been gathering and disposing of trash. The Defendant denied manufacturing methamphetamine or giving anyone permission to manufacture methamphetamine in his home.

The Defendant first argues that the evidence is insufficient to support his conviction for attempt to manufacture methamphetamine. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

The Defendant contends that the evidence is insufficient to support his conviction for two reasons. First, he was not present in his house for several days prior to August 21, when the police discovered the methamphetamine lab in his house. Second, the police were at the Defendant's house

on August 19 and 20, but they did not find items that were used to manufacture methamphetamine. However, the evidence shows that many items that are common in the manufacture of methamphetamine were found in and around the Defendant's residence. A few items were located in the house, but most of the items, including cans of chemicals, numerous bags of garbage containing "chemicals," three drums filled with matchbooks, and plastic tubing were found in the shed behind the Defendant's house. Furthermore, several burn piles were located on the Defendant's property that contained aerosol cans and glass jars. Agent Mundy testified that all of these items are consistent with methamphetamine laboratories. From this evidence, a rational trier of fact could have concluded beyond a reasonable doubt that the Defendant was guilty of attempting to manufacture methamphetamine. This issue is without merit.

Next, the Defendant argues that the trial court erred by denying his motions to exclude the testimony of witnesses Sherri Conner and Gloria Whitehead. He contends that because neither witness was listed on the indictment or provided through discovery, the trial court should not have allowed their testimony. Furthermore, the Defendant asserts that the court should have excluded the testimony of Sherri Conner because the State improperly severed the case against her on the morning of trial.

> Tennessee Code Annotated section 40-17-106 states:
>> It is the duty of the district attorney general to endorse on each indictment or presentment, at the term at which the same is found, the names of such witnesses as the district attorney general intends shall be summoned in the cause, and sign such indictment or presentment name thereto.

"The purpose of this statute is to prevent surprise to the defendant at trial and to permit the defendant to prepare his or her defense to the State's proof." State v. Kendricks, 947 S.W.2d 875, 883 (Tenn. Crim. App. 1996). However, "[s]ection 40-17-106 is directory only and does not necessarily disqualify a witness whose name does not appear on the indictment from testifying." State v. Harris, 839 S.W.2d 54, 69 (Tenn. 1992).

> The State's failure to include a witness' name on the indictment will not automatically disqualify the witness from testifying. A defendant will be entitled to relief for nondisclosure only if he or she can demonstrate prejudice, bad faith, or undue advantage. The determination of whether to allow the witness to testify is left to the sound discretion of the trial judge.

Kendricks, 947 S.W.2d at 883 (citations omitted).

In this case, the Defendant has failed to show how the State's failure to disclose its witnesses Sherri Conner and Gloria Whitehead was in bad faith, resulted in an undue advantage to the State, or prejudiced the Defendant. Instead, the Defendant states the bare conclusion that the nondisclosure "resulted in obvious prejudice to the Appellant and undue advantage to the State." However, the record reflects that the witnesses' testimony actually benefitted the Defendant. Sherri Conner, the

Defendant's wife, testified that neither she nor her husband ever manufactured methamphetamine or gave anyone permission to do so in their home. Both women testified that, when they went to the Defendant's house on each of the two days prior to August 21, none of the items that the police recovered, such as the chemicals, were there. Because the Defendant has made no showing of prejudice to his defense or bad faith or undue advantage on the part of the State, we find that the trial court did not abuse its discretion by allowing Sherri Conner and Gloria Whitehead to testify.[2]

The Defendant also contends that the trial court should have excluded the testimony of Sherri Conner because the State improperly severed her case on the morning of the Defendant's trial. The Defendant argues that the State violated Tennessee Rule of Criminal Procedure 14(a), which mandates that a motion by the State for severance of defendants may be granted only prior to trial, except by consent of the defendant.[3] Decisions to consolidate or sever offenses or defendants are to be reviewed for an abuse of discretion. See State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999). First, we note that the record on appeal contains no reference to any order of the trial court addressing the issue of the severance of the charge against Sherri Conner. Second, the Defendant cites no authority to support his argument that improperly severing Ms. Conner's charge would render her testimony inadmissible against the Defendant. The Defendant does not explain why allowing Ms. Conner to testify constituted an abuse of the trial court's discretion. Furthermore, he fails to show that he has suffered any prejudice as a result of Ms. Conner's testimony. Therefore, the trial court did not commit reversible error by allowing the witness to testify, and this issue is without merit.

The Defendant next argues that the trial court erred by denying his motion for an order requiring the State to provide the Defendant with any statement, arrest history, or prior convictions of the State's witnesses, specifically Gloria Whitehead and Sherri Conner. However, there is no copy of the motion or argument of the motion in the record. It is the duty of the appellant to prepare a transcript of the evidence and proceedings as is necessary to convey a fair, accurate, and complete account of what transpired regarding the issues presented on appeal. See Tenn. R. App. P. 24(b); State v. Robinson, 73 S.W.3d 136, 154 (Tenn. Crim. App. 2001). Moreover, the Defendant failed to adequately argue this issue in his brief. He cites no case law, he does not refer to the record, and he neglects to mention whether any statements, prior arrests, or prior convictions existed or what the substance of them may have been. However, rather than treat this issue as waived pursuant to Tennessee Court of Criminal Appeals Rule 10(b), we will briefly address the Defendant's contention.

---

[2]The Defendant also briefly argues that the trial court's denial of his motion to exclude the testimony of the two witnesses violates Tennessee Rule of Criminal Procedure 16. However, Rule 16 "does not require nor authorize pretrial discovery of the names and addresses of the State's witnesses." Harris, 839 S.W.2d at 69.

[3]We note that "prior to trial" has been interpreted to mean "sometime earlier than 'the day of the trial when the jury is waiting in the hall.'" Spicer v. State, 12 S.W.3d 438, 444 n.6 (Tenn. 2000) (quoting State v. Hamilton, 628 S.W.2d 742, 744 (Tenn. Crim. App. 1981)).

First of all, with respect to the Defendant's request for statements made by the State's witnesses, Tennessee Rule of Criminal Procedure 16(a)(2) expressly states that "statements made by state witnesses or prospective state witnesses" are not subject to discovery. Rather, Rule 26.2 of the Tennessee Rules of Criminal Procedure provides that the statements of a witness other than the defendant shall be provided to the opposing party after the witness has testified on direct examination. The Tennessee Supreme Court has held "the State has no obligation to produce statements of a witness until the conclusion of the witness' testimony on direct examination." State v. Taylor, 771 S.W.2d 387, 394 (Tenn. 1989). As the Defendant made no request after the witnesses testified on direct examination, he was not entitled to those statements.

Likewise, the State was not obligated to provide the Defendant with prior arrests or convictions of its witnesses. The Defendant cites to Tennessee Code Annotated section 40-32-101(c)(3), which states in pertinent part, "Release of arrest histories of a defendant or potential witness in a criminal proceeding to an attorney of record in the proceeding shall be made to such attorney upon request." However, chapter 32 addresses the destruction or release of records upon dismissal or acquittal, not the duty of the State to provide records as a part of discovery. Indeed, this Court has held that "[n]either Criminal Procedure Rule 16 nor the decisional law in this state imposes on the state a duty *to obtain and provide* the arrest histories of its witnesses. Moreover, it has been settled that section 40-32-101(c)(3) does not create or provide a pretrial remedy for the discovery of arrest histories from the state." State v. David Johnson, No. W1998-00687-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 222, at *18-19 (Jackson, March 14, 2001) (citations omitted). Therefore, the State had no duty to provide prior arrests and convictions of its witnesses to the Defendant, and the trial court did not err by denying the Defendant's motion. This issue is without merit.

Finally, the Defendant asserts that the trial court erred by denying his motion to exclude over one hundred photographs, of which only sixteen were actually offered into evidence by the State. Furthermore, the Defendant argues that the trial court erred by denying his attempt to enter the balance of the photographs into evidence. Only the sixteen photographs were made part of the record on appeal. These sixteen photographs that were introduced by the State depicted the chemicals, cans, bottles, bags of waste, and burn piles that were located in and around the Defendant's house. Photographs of these items that were found at a defendant's residence and are peculiar to the manufacture of methamphetamine are certainly relevant to a prosecution for attempt to manufacture methamphetamine. "The decision to admit the photographs lies in the discretion of the trial court and will not be reversed absent a clear showing of an abuse of that discretion." Harris, 839 S.W.2d at 73. We conclude that the ruling of the trial court was not an abuse of discretion and the photographs were properly admitted. The record is inadequate with respect to the balance of the photographs that the Defendant requested be admitted. Apparently, these are photographs that the Defendant received from the State during discovery. In his brief, the Defendant states that "some of [the photographs] proved to be of sites other than those of this occurrence and others bore a 'date stamp' three weeks prior to August 21, 2000." The Defendant is arguing that the reliability of the sixteen photographs is called into question by the other, unrelated photographs that the Defendant

received along with the sixteen. However, in the absence of a complete record, which would include the photographs in question, we must presume that the trial court was correct in its ruling. Accordingly, this issue is without merit.

The judgment of the trial court is affirmed.

_____

_____DAVID H. WELLES, JUDGE