# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 5, 2011

## STATE OF TENNESSEE v. JOSE LUIS VIZCAINO-RAMOS

**Direct Appeal from the Circuit Court for Hardeman County**
**No. 09-01-0830    J. Weber McCraw, Judge**

_____

**No. W2010-01325-CCA-R3-CD  - Filed August 3, 2011**

_____

The Defendant-Appellant, Jose Luis Vizcaino-Ramos, was convicted by a Hardeman County jury of first degree premeditated murder and sentenced to life with the possibility of parole. On appeal, Vizcaino-Ramos presents the following issues for our review: (1) whether the trial court erred by admitting the testimony of the victim's son; and (2) whether the evidence was sufficient to support his conviction. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and J. C. MCLIN, JJ., joined.

Clifford K. McGown, Jr., Waverly, Tennessee (on appeal); Gary F. Antrican, District Public Defender; Shana Johnson and Kari Weber, Assistant District Public Defenders, Somerville, Tennessee (at trial), for the Defendant-Appellant, Jose Luis Vizcaino-Ramos.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Senior Counsel; D. Michael Dunavant, District Attorney General; and Joe Van Dyke, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On March 6, 2004, the victim, Mary Graves, was fatally shot by her former boyfriend, Vizcaino-Ramos, the Defendant-Appellant. The victim's five-year-old son, C.G.,[1] was present in the victim's car when the shooting occurred. The Defendant-Appellant fled to

_____

[1]Due to the age of the victim's son, he shall be referred to by his initials.

Mexico after the shooting and the case remained dormant for several years. The Defendant-Appellant was eventually extradited to Tennessee, and the trial began on January 13, 2010.

C.G., eleven years old at the time of trial, testified that the Defendant-Appellant and the victim had an argument while they were in the victim's car. C.G. observed the Defendant-Appellant, whom he called "dad," shoot his mother. C.G. recalled that the Defendant-Appellant was the only person in the car with a gun. When the shooting occurred, C.G. was in the back seat of the victim's car, the victim was in the driver's seat, and the Defendant-Appellant was in the passenger seat. The shooting occurred in front of the victim's house. C.G. testified that after the shooting, the Defendant-Appellant dragged the victim's body out of the car and placed it by her house. C.G. was taken inside the victim's house and left alone that night.

Leo Dodd testified about an encounter with C.G. on the night of the shooting. Dodd was driving on a two-lane highway when he saw C.G. standing in the middle of the highway. Dodd knew C.G. was the victim's son. Dodd pulled C.G. off of the highway and asked him what he was doing. C.G. claimed his dad had killed his mom. C.G. also told Dodd that the victim's body was in the yard. Dodd said he flagged down a police officer and explained the situation.

Sergeant Arness Bowden of the Middleton Police Department responded to a call regarding the shooting. He testified that the victim's body was found by the side of a house. Sergeant Bowden said no other civilians were at the house. He claimed the police checked the surrounding area for the victim's car; however, they were unable to locate it. Sergeant Bowden testified that a weapon was not found at the house while he was present.

Special Agent Nathan Bishop of the Tennessee Bureau of Investigation and the criminal investigator for this case testified that the victim's body had multiple gunshot wounds. Special Agent Bishop thought the murder may have occurred at another location based on the absence of blood splatter. He was informed that the victim lived with the Defendant-Appellant, whose whereabouts were unknown. Special Agent Bishop testified that a nine millimeter handgun, spent shell casings, and rounds of ammunition were found at the scene. An unfired nine millimeter round was also found inside the victim's house. This unfired bullet was consistent with the other bullets found at the scene. Special Agent Bishop stated that the victim's car was later found in Texas.

Special Agent Cathy Ferguson of the Tennessee Bureau of Investigation testified that she interviewed C.G. after the shooting. C.G.'s description during the interview was consistent with his testimony at trial. Special Agent Ferguson stated that the Defendant-Appellant was discovered in Mexico sometime after October of 2008 when he was extradited

to Tennessee. Special Agent Ferguson described several pieces of evidence that were found in the victim's car in Texas. These items included a spent shell casing that was fired from a handgun. The shell casing had the marking of a nine millimeter Luger.

A medical examiner testified that the victim's body had six gunshot wounds. These wounds were mostly to the right side of the victim's body and served as the cause of the victim's death.

Special Agent Dan Royse of the Tennessee Bureau of Investigation testified that he was assigned to the firearms identification unit. He examined the gun and the bullets that were recovered as evidence. Special Agent Royse examined the spent cartridge casings that were found outside the victim's house and inside the victim's car. He also examined the slug that was found inside the victim's body. Special Agent Royse determined that the casings and the slug were fired from the gun found at the crime scene.

Two witnesses testified about conversations that they had with the Defendant-Appellant around January 25, 2004. Dennis Brewer and Mike Kennamore said the Defendant-Appellant threatened to kill his girlfriend. The context of these conversations was not provided.

Officer Lisa Howard testified that she was a correction officer with the Hardeman County Sheriff's Department. Around September 26, 2009, the Defendant-Appellant admitted to Officer Howard that he shot the victim. The Defendant-Appellant claimed he accidentally shot the victim while they were fighting over a gun. The Defendant-Appellant reported that he argued with the victim over her relationship with another man. Officer Howard stated, "Basically, she was using him. He was in love with her and she had another–she was involved with another man." The Defendant-Appellant did not explain why the gun was fired six times.

Reba Thurmon and Alberto Vasquez were close friends of the Defendant-Appellant. Thurmon said the Defendant-Appellant visited her house shortly before the shooting. He was driven there by the victim, and Thurmon observed C.G. was also in the car. During the visit, Vasquez agreed to pick up the Defendant-Appellant from the victim's house later that evening. When Thurmon and Vasquez drove to the victim's house to pick up Vizcaino-Ramos, no one was there. As Thurmon and Vasquez were about to leave, they were stopped by the police. Thurmon said she talked to the police and they explained that the victim had been killed.

Vasquez corroborated Thurmon's testimony about what transpired on the day of the shooting. Vasquez believed the Defendant-Appellant was staying with him because he was

lonely. The Defendant-Appellant was upset that his relationship with the victim had ended and had expressed a desire to commit suicide. Vasquez never heard the Defendant-Appellant talk about harming another person.

Following the proof at trial, the jury convicted Defendant-Appellant of first degree premeditated murder. He was sentenced to life with the possibility of parole. The Defendant-Appellant filed a motion for new trial, which was denied by the trial court. He then filed a timely notice of appeal.

## ANALYSIS

**I. Admissibility of Evidence**. The Defendant-Appellant claims a new trial is warranted because the trial court failed to determine whether C.G., age eleven, was competent to testify under Rule 603 of the Tennessee Rules of Evidence. He asserts that the trial court did not administer "even the semblance of an oath." The State contends the trial court met the requirements of Rule 603, C.G. adequately affirmed that he would testify truthfully, and that any error in the administration of the oath was harmless. Upon review, we conclude the requirements of Rule 603 were met.

All witnesses are presumed competent unless otherwise provided by the Tennessee Rules of Evidence or by statute. See Tenn. R. Evid. 601. Rule 603 mandates that "every witness shall be required to declare that the witness will testify truthfully by oath or affirmation, administered in a form calculated to awaken the witness's conscience and impress the witness's mind with the duty to do so." In order to comply with Rule 603, the trial court must have determined that the witness understood the concept of the "truth" and agreed to testify "truthfully." State v. Kendricks, 947 S.W.2d 875, 881 (Tenn. Crim. App. 1996). This court has defined the "pivotal issue" as the witness's "ability to understand the necessity of telling the truth while testifying[.]" State v. Griffis, 964 S.W.2d 577, 592 (Tenn. Crim. App. 1997) (citing State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993)). The appellant has the burden of showing that the trial court abused its discretion by finding that a witness was competent to testify. Kendricks, 947 S.W.2d at 881.

In this case, the trial court questioned C.G. as follows before the start of his testimony:

TRIAL COURT:    [C.G.], I am going to ask you some questions here in a few minutes, do you understand that?

C.G.:    Yes, sir.

TRIAL COURT: You understand that I need you to tell the truth when you answer these questions[?]

C.G.: Yes, sir.

TRIAL COURT: Do you know the difference between telling a lie and telling the truth?

C.G.: Yes, sir.

TRIAL COURT: What's the difference?

C.G.: A lie is–it's not telling the truth.

TRIAL COURT: Okay. A lie is something that didn't happen. Is that what you're telling me?

C.G.: Um-hmmm.

TRIAL COURT: But the truth is something that you–

C.G.: Did happen.

TRIAL COURT: Okay. And you promise to tell the truth today?

C.G.: Yes, sir.

The trial court then asked whether anyone had an issue with whether C.G. was competent to testify. Defense counsel responded, "No, sir."

Upon review, the trial court did not abuse its discretion by finding that C.G. was competent to testify. As a preliminary matter, we note that defense counsel failed to raise a timely objection to this issue before C.G. testified. See Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Defense counsel chose not to contest this issue when the trial court explicitly provided the opportunity to do so. As a result, this issue is waived. Waiver notwithstanding, the transcript shows that the trial court complied with Rule 603. C.G. did not take an oath before testifying. He did, however, affirm that he understood his obligation to tell the truth. C.G. conveyed that he knew the difference between the truth and a lie. He

promised to tell the truth at trial. The Defendant-Appellant has not shown that C.G.'s testimony was inadmissible under Rule 603. Accordingly, he is not entitled to relief on this issue.

**II. Sufficiency of the Evidence**. The Defendant-Appellant claims the evidence did not support his conviction for first degree premeditated murder. He argues that he should have been convicted of a lesser-included offense because he lacked the required mental state. In response, the State contends sufficient evidence was presented that the Defendant-Appellant committed first degree premeditated murder. The State argues that premeditation was shown by the manner of the killing, the Defendant-Appellant's prior threats to kill the victim, and his actions after the shooting. Upon review, we conclude the evidence was sufficient to support the Defendant-Appellant's conviction.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, this court must consider "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." The requirement that guilt be found beyond a reasonable doubt is applicable in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977) and Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The Tennessee Supreme Court has adopted the United States Supreme Court standard that direct and circumstantial evidence should be treated the same when reviewing the sufficiency of the evidence. See State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." State v. Philpott, 882 S.W.2d 394, 398 (Tenn. Crim. App. 1994) (citing State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978), superseded by statute on other grounds as stated in State v. Barone, 852 S.W.2d 216, 218 (Tenn. 1993)). This court has often stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." Bland, 958 S.W.2d at 659 (citation omitted). A guilty verdict also

"removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citation omitted).

Tennessee Code Annotated section 39-13-202(a)(1) defines first degree murder as the "premeditated and intentional killing of another." Premeditation is defined, under subsection (d), as follows:

> As used in subdivision (a)(1) "premeditation" is an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

T.C.A. § 39-13-202(d). A person's actions are "intentional" if it is the person's "conscious objective or desire to . . . cause the result." T.C.A. § 39-11-106(a)(18).

The Tennessee Supreme Court has stated that "premeditation may be established by any evidence from which a rational trier of fact may infer that the killing was done 'after the exercise of reflection and judgment' as required by Tennessee Code Annotated section 39-13-202(d)." State v. Davidson, 121 S.W.3d 600, 615 (Tenn. 2003). The Court identified the following factors as supporting a finding of premeditation:

> The use of a deadly weapon upon an unarmed victim; the particular cruelty of a killing; the defendant's threats or declarations of intent to kill; the defendant's procurement of a weapon; any preparations to conceal the crime undertaken before the crime is committed; destruction or secretion of evidence of the killing; and a defendant's calmness immediately after a killing.

Id. (citing Bland, 958 S.W.2d at 660). These factors, however, are not exhaustive. Id. The trier of fact may also consider evidence of the defendant's motive and the nature of the killing. State v. Nesbit, 978 S.W.2d 872, 898 (Tenn. 1998).

We are compelled to observe the extent of defense counsel's argument in support of this issue. It is confined to the following sentence: "Mr. Vizcaino-Ramos asserts that, in light of his mental state, it would be impossible for him to form the mental state necessary to commit first degree murder." The brief does not explain what is meant by the phrase "in

light of his mental state." It is equally unclear how his mental state made it "impossible" to commit premeditated murder. This issue is waived because it was not properly supported by argument. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

Waiver notwithstanding, we conclude that the evidence in this case supported the conviction for first degree premeditated murder. C.G. testified that he was in the car when he observed the Defendant-Appellant and the victim engaged in an argument. He recalled that the Defendant-Appellant was the only person in the car with a gun. C.G. observed the Defendant-Appellant shoot the victim. The Defendant-Appellant also admitted to a correction officer that he killed the victim. The medical examiner testified that the victim's body had six gunshot wounds, which suggests that the shooting was intentional. The victim was unarmed, and two witnesses testified that the Defendant-Appellant threatened to kill the victim before the shooting. The evidence established that the Defendant-Appellant shot the victim after the exercise of reflection and judgment. A rational juror could have found the elements of the first degree murder beyond a reasonable doubt. Accordingly, the Defendant-Appellant is not entitled to relief.

## CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE