# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### June 27, 2012 Session

## JERMAINE R. CARPENTER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Sullivan County**
**No. C58407      Robert H. Montgomery, Jr., Judge**

**No. E2011-02294-CCA-R3-PC   December 28, 2012**

The petitioner, Jermaine R. Carpenter, filed for post-conviction relief from his conviction of simple possession of cocaine and two convictions of the sale of .5 grams or more of a substance containing cocaine within 1,000 feet of a school zone, alleging that his trial counsel was ineffective. The post-conviction court denied the petition, and the petitioner now appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Jim R. Williams, Kingsport, Tennessee, for the appellant, Jermaine R. Carpenter.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Teresa Nelson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On direct appeal, this court summarized the proof at trial as follows:

> Detective Cliff Ferguson of the Kingsport Police Department testified that he was employed in the police department's vice unit. He said that he was approached by a confidential informant who told him he could purchase cocaine from the [petitioner]. On April 4, 2005, the informant called the

[petitioner] to set up a "buy." The detective told the informant to set the transaction up "anywhere as long as it was in Kingsport."

The [petitioner] agreed to meet the informant, and an undercover officer was assigned to make the purchase. The informant and his car were searched for contraband and drugs, and the officer assigned to buy the drugs was equipped with a recording device. No drugs or contraband was found in the informant's car, and the informant and the undercover officer proceeded to the meeting place which was across the street from the Dobbins Bennett High School campus. The detective, who knew the [petitioner] from previous contacts, observed the [petitioner] drive his car into the parking lot of the meeting place. The detective said that the informant and the undercover officer approached the [petitioner] and got into his car. The informant introduced the undercover officer to the [petitioner] as "Mark." The [petitioner] told the undercover officer that his name was "Jermaine." The officer told the [petitioner] that he "was looking to buy about $80.00 worth of crack cocaine." The officer gave the [petitioner] the drug money that had previously been photocopied, and the [petitioner] handed him four small packages of what appeared to be crack cocaine. The informant and the undercover officer proceeded directly to a prearranged location to meet with the detectives from the vice unit. The undercover officer turned over the four packages to the detective.

The detective testified that the informant placed another call to the [petitioner] on April 14, 2005, and arranged to meet him at a restaurant in Kingsport. The detective searched the informant for drugs and contraband, and the undercover officer was again outfitted with recording equipment. When they arrived at the restaurant, the [petitioner] was already in the parking lot. The restaurant was across the street from Ross and Robinson Middle School. The undercover officer got into the front seat of the [petitioner's] car and exchanged $80.00 for four tan-colored rocks of crack cocaine. Following the exchange, the detective met with the informant and undercover officer at a predetermined location. The detective said he searched the

informant again and took the cocaine the undercover officer purchased from the [petitioner].

A forensic scientist with the Tennessee Bureau of Investigation [(TBI)] testified that on April 15, 2005, she received the rocklike substances purchased from the [petitioner] by the undercover officer. She examined the items and found that the substance purchased from the [petitioner] on April 4, 2005, contained cocaine and weighed 1.4 grams. She said that the substance purchased from the [petitioner] on April 14, 2005, contained cocaine and weighed 1.1 grams.

A cartography expert employed by the City of Kingsport testified that he managed the geographic information for the city and generated computer maps. He explained that both transactions were conducted within 1000 feet of schools.

The director of student services with the Kingsport City School System testified that Dobbins Bennett High School was a functioning public secondary school for the City of Kingsport. He also testified that Ross and Robinson Middle School was a functioning public middle school in April of 2005.

The [petitioner's] grandmother testified that in April of 2005, the [petitioner] had long hair in "corn rows." She said that his hair was braided away from his face. The grandmother further testified that the [petitioner] had tattoos on his arms and wrists.

State v. Jermaine Rashad Carpenter, No. E2007-02498-CCA-R3-CD, 2009 WL 331330, at *1-2 (Tenn. Crim. App. at Knoxville, Feb. 11, 2009).

The jury found the petitioner guilty of two counts of the sale of .5 grams or more of a substance containing cocaine, a Schedule II drug, within 1,000 feet of a school zone, a Class A felony; two counts of the delivery of .5 grams or more of a substance containing cocaine within 1,000 feet of a school zone, a Class A felony; and simple possession of cocaine, a Class A misdemeanor. The convictions for the April 4, 2005 sale and delivery were merged, and the convictions for the April 14, 2005 sale and delivery were merged. Id. at *1. The petitioner was given concurrent sentences of twenty-five years for each felony conviction and eleven months and twenty-nine days for the misdemeanor conviction. Id. On

-3-

direct appeal, this court affirmed the petitioner's convictions and sentences. Id.

Thereafter, the petitioner timely filed a pro se petition for post-conviction relief, alleging that his trial counsel was ineffective. Counsel was appointed to represent the petitioner, and an amended petition was filed. In the petitions, the petitioner alleged that counsel was ineffective by failing to request a pretrial hearing and ruling on a missing witness instruction; failing to investigate, interview witnesses, and prepare for trial; failing to object to the testimony of witnesses who were not on the State's witness list; and failing to file a motion for speedy trial.

At the post-conviction hearing, the petitioner testified that he had an eleventh-grade education. He said that during trial counsel's representation, he spoke with the petitioner two or three times, mostly about accepting a plea agreement. However, the petitioner said that he did not know if counsel advised the State of the plea offers the petitioner suggested. The petitioner acknowledged that he received at least one plea offer from the State and that he rejected it.

The petitioner said that several of his court dates were postponed because of counsel's failure to appear. The petitioner wrote letters asking counsel to communicate with the petitioner, but counsel did not respond. The petitioner said that because he waited for trial for nineteen months and had little contact with counsel, he filed a pro se motion for speedy trial.

The petitioner stated that his infrequent meetings with counsel led him to believe that counsel was unable to adequately defend him at trial. The petitioner said that counsel never developed a trial strategy. He said, "I asked him what we was going to do. Like the same day as my trial or the day before he just told me to write any questions down that I wanted [counsel] to ask and that was it." Because he was unhappy with counsel, the petitioner filed a pro se motion to have trial counsel removed, but the trial court denied the motion.

The petitioner said that on February 12, 2007, a hearing was held on a motion to suppress a statement written by the petitioner. The trial court found that the petitioner knowingly and voluntarily waived his rights before giving the statement. The petitioner maintained that because counsel did not adequately represent him at the suppression hearing, the statement was used against the petitioner at the sentencing hearing but not at trial.

The petitioner stated that the only defense witness called at trial was his grandmother and that she did not have any direct knowledge of the crimes. His grandmother testified about the petitioner's appearance at the time of the offenses, particularly because identification was an issue at trial.

Counsel did not subpoena other witnesses to testify for the petitioner at trial. The petitioner maintained that trial counsel failed to fully investigate the crimes and did not interview or subpoena witnesses. Specifically, the petitioner maintained that trial counsel should have interviewed and subpoenaed Wilfred Gaines, the confidential informant who set up the transactions and could positively identify the seller. Counsel told the petitioner "that it wouldn't be good for me to have him interviewed." However, the petitioner believed that Gaines would have testified that the petitioner was not the person involved in the transactions. The petitioner said counsel made no effort to locate Gaines. The petitioner acknowledged that one of the drug transactions was video recorded, that the other was audio recorded, and that both recordings were played at trial. The petitioner also acknowledged that he was identified by other witnesses at trial. The petitioner also stated that trial counsel should have interviewed and subpoenaed Dominique CocLough, Chris McKinney, and Josh Hudson. The petitioner conceded that he never asked trial counsel to subpoena CocLough, McKinney, or Hudson, but he stated that he did not know he could make that request.

The petitioner complained that prior to trial, counsel should have sought a missing witness jury instruction because neither the State nor the petitioner called Gaines as a witness. The petitioner acknowledged that despite this failure, during closing argument counsel repeatedly asked, "'Where is Wilfred Gaines?"

The petitioner said that counsel failed to make some critical objections at trial. Specifically, he complained that counsel did not object to the testimony of TBI Agent Jessica Marquez, who identified the substances as cocaine, or to the testimony of Kevin Kelly, the Kingsport Police Department evidence custodian. He asserted that the State failed to include Agent Marquez and Kelly on the witness list provided during discovery. The petitioner said that counsel also failed to cross-examine Agent Marquez and Kelly.

On cross-examination, the petitioner acknowledged that he had a history of juvenile adjudications and adult criminal convictions. He conceded that he had been in court multiple times on various cases. The petitioner agreed that counsel also represented him on April 10, 2006, at a hearing about a violation of probation and community corrections and that the petitioner was sent to the penitentiary because of the violation. The petitioner agreed that he was serving time for the probation violation while awaiting trial in the instant case. At the end of the violation hearing, counsel requested a trial date. The trial court stated that an undercover officer involved in the crimes was stationed with the military in Iraq, that the officer would not return until around December 2006, and that trial would be set soon after the officer's return. The petitioner's motion for speedy trial was dated July 3, 2006. Ultimately, the trial occurred on February 12, 2007.

The petitioner acknowledged that trial counsel filed a pretrial notice of the petitioner's

intention to pursue an entrapment defense, argued entrapment at trial, and raised the issue of entrapment on appeal.

Trial counsel testified that he began representing the petitioner in 2005 and also represented the petitioner on the violations of probation and community corrections. Trial counsel said that the petitioner made an incriminating statement to Detective Sean Chambers when he was served with a capias on the drug charges and that the statement was the basis of the probation and community corrections violations. Trial counsel filed a motion to suppress the statement because the petitioner was under the influence of drugs or alcohol at the time and could not have knowingly and voluntarily waived his rights. Although the motion was not successful, the State did not submit the statement as evidence during trial. However, the statement was used at the sentencing hearing.

Trial counsel stated that the State made plea offers to the petitioner, specifically recalling an offer for a fifteen-year, Range I sentence to be served at 100% consecutively to the community corrections sentence, which the petitioner rejected. Trial counsel noted that the petitioner was actually a Range II, multiple offender. Trial counsel received another plea offer in August 2006 for a sentence of fourteen years at thirty-five percent and discussed it with the petitioner. Trial counsel encouraged the petitioner to accept the offer and informed him the State would not make more offers. Trial counsel explained to the petitioner that if he were convicted at trial, he faced a minimum sentence of twenty-five years at 100%. The petitioner spoke with his grandmother before making a decision and rejected the offer.

In April 2006, the petitioner informed trial counsel that he wanted the case set for trial as quickly as possible. Accordingly, at the violation hearing, trial counsel asked the trial court "for the quickest trial date I could get." The trial court complied, setting the trial date for January 2007 because the undercover officer who made the drug buys was due to return in December 2006 from overseas military duty. The trial ultimately took place in February 2007. Trial counsel thought the petitioner received a speedy trial and noted that the petitioner was incarcerated on other charges at the time.

Trial counsel stated that he reviewed the State's discovery materials to determine the strength of the State's case. The petitioner denied selling the drugs. However, at least two witnesses positively identified the petitioner as the perpetrator. Trial counsel said he tried to attack the identification at trial through cross-examination and the testimony of the petitioner's grandmother regarding the petitioner's appearance at the time of the offenses. Trial counsel said that the petitioner's grandmother was "a very credible lady."

Trial counsel said that he attempted to pursue an entrapment defense but that he was not allowed to argue that defense at trial. He stated:

This one bugged me because it was my belief that he had been trapped in that he had been told to go to the school zone to get – you know, even if it was – even if they convicted him I believed that it should not have been a school zone case. I believed that and I still believe that but that was to no avail.

Trial counsel said that he had never heard of CocLough, McKinney, or Hudson. He and the petitioner discussed Gaines' potential testimony. Trial counsel "believed that was not a good strategy at all to call Wilfred Gaines." Trial counsel said that he did not know what Gaines would say and that neither he nor the State knew Gaines' location. Although the petitioner told trial counsel that he knew Gaines, the petitioner never gave trial counsel Gaines' address. Trial counsel said that Gaines had been a confidential informant on several drug cases and that Gaines had told officers the petitioner was the seller. Therefore, trial counsel thought Gaines would testify favorably for the State or, if he testified for the defense, would be impeached. Trial counsel explained, "I don't put on the prosecution's case and I certainly don't want to put on something that could hurt my client." Trial counsel explained that he mentioned during closing argument that Gaines did not testify at trial in an attempt to make the State's case appear weak.

Trial counsel acknowledged that Agent Marquez's name was not on the witness list but that he was not surprised when she testified for the State. He said that when he was given Agent Marquez's laboratory report months prior to trial, he was put on notice that she would testify. He could think of no basis to challenge Agent Marquez's qualifications or her determination that the substance purchased was cocaine. Counsel also said that although Kelly's name was not on the witness list, he was aware that Kelly, the police evidence custodian, would be a chain of custody witness. Trial counsel said that the petitioner denied selling the drugs; therefore, trial counsel's trial strategy was to challenge the identification of the petitioner as the perpetrator, not to challenge the transaction itself. Counsel stated that challenging the testimony of Agent Marquez and Kelly would not be consistent with his trial strategy.

At the conclusion of the hearing, the post-conviction court denied the petition, finding that the petitioner failed to establish his claims by clear and convincing evidence. On appeal, the petitioner challenges this ruling.

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means

evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

The petitioner maintains that counsel was ineffective by failing to request a pretrial hearing and ruling on a missing witness instruction regarding Gaines. The petitioner complains that although counsel knew Gaines was not going to testify at trial, counsel did not advise the trial court of his intention to argue the missing witness inference at the proper

stage in the proceedings, request a jury instruction on the missing witness inference, or effectively argue the missing witness inference during closing argument. Generally, the missing witness rule allows a party to argue and have the jury instructed "that if the other party has it peculiarly within his power to produce a witness whose testimony would naturally be favorable to him, the failure to call that witness creates an adverse inference that the testimony would not favor his contentions." State v. Middlebrooks, 840 S.W.2d 317, 334 (Tenn. 1992). Before a party may invoke the missing witness rule, the record must demonstrate that (1) the witness had knowledge of material facts; (2) a relationship existed between the witness and the opposing party that would naturally incline the witness to favor that party; and (3) the missing witness was available to the process of the court for trial. State v. Francis, 669 S.W.2d 85, 88 (Tenn. 1984); Delk v. State, 590 S.W.2d 435, 440 (Tenn. 1979). We note that the petitioner did not adduce proof of Gaines' availability at the time of trial. Moreover, the post-conviction court noted that despite not having a missing witness instruction, counsel nevertheless raised the issue by repeatedly asking during closing argument, "Where is Wilfred Gaines?" The post-conviction court found that the petitioner suffered no prejudice relating to this issue. There is nothing in the record to preponderate against this finding.

The petitioner also argues that counsel was ineffective for failing to interview Gaines, CocLough, McKinney, and Hudson. However, the petitioner did not produce those witnesses to testify at his post-conviction hearing. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on what benefit these witnesses might have offered to the petitioner's case, nor may we guess as to what evidence further investigation may have uncovered. Id. Accordingly, the petitioner has failed to demonstrate prejudice in this regard.

The petitioner also argues that counsel failed to sufficiently investigate the case or to prepare a defense. The post-conviction court found that trial counsel had a defense strategy based upon the petitioner's claim that he was not the person who sold the drugs. The court noted that trial counsel thoroughly cross-examined witnesses regarding identification and had the petitioner's grandmother, "a very believable witness," testify regarding the petitioner's appearance at the time of the crimes. There is nothing in the record to preponderate against the post-conviction court's findings. Moreover, the petitioner does not identify any evidence that could have been discovered by further investigation or any other defense that could have been pursued by counsel. Accordingly, the petitioner failed to establish that counsel was ineffective on this basis.

The petitioner maintains that counsel was ineffective by failing to object to the

testimony of Agent Marquez and Kelly because they were not on the State's witness list. Tennessee Code Annotated section 40-17-106 provides that "[i]t is the duty of the [State] to endorse on each indictment or presentment . . . the names of the witnesses as the district [State] shall be summoned in the cause . . . ." The statute's purpose "is to prevent surprise to the defendant at trial and to permit the defendant to prepare his or her defense to the State's proof." State v. Kendricks, 947 S.W.2d 875, 883 (Tenn. Crim. App. 1996). The State's duty "is merely directory, not mandatory." Id. Generally, the State's "failure to list or provide names of witnesses in accordance with Section 40-17-106, Tenn. Code Ann., neither disqualifies the witness nor entitles defendant to relief unless prejudice can be shown." State v. Morris, 750 S.W.2d 746, 749 (Tenn. Crim. App. 1987). The post-conviction court accredited counsel's testimony that he was not surprised by either witnesses testimony at trial. Therefore, the petitioner did not suffer any prejudice.

The petitioner asserts that counsel was ineffective by failing to file a motion for speedy trial. He complains that approximately nineteen months elapsed between the filing of the presentment and trial. Counsel testified that the trial was scheduled to accommodate the return of an essential State's witness who was serving in the military overseas and that the petitioner was incarcerated on other charges while awaiting trial. The post-conviction court found that the petitioner did not establish that he suffered prejudice as a result of the scheduling of his trial. See Berry v. State, 366 S.W.3d 160, 174-75 (Tenn. Crim. App. 2011). The record supports this finding.

Finally, the petitioner argues that counsel's errors, when considered cumulatively, entitle him to post-conviction relief. However, we have discerned no prejudice from any of the foregoing issues singularly and also discern no prejudice cumulatively.

### III.  Conclusion

In sum, we conclude that the petitioner failed to establish that counsel was ineffective regarding the missing witness instruction; the investigation, presentation of witnesses, and formulation of a defense; not objecting to the testimony of witnesses who were not on the State's witness list; and the speedy trial issue. Accordingly, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE