# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 27, 2015

## ERNEST WILLARD DODD v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Warren County**
**No. F-12726      Larry B. Stanley, Judge**

_____

**No. M2015-00111-CCA-R3-PC – Filed January 14, 2016**

_____

The Petitioner, Ernest Willard Dodd, appeals as of right from the Warren County Circuit Court's denial of his petition for post-conviction relief, wherein he challenged his convictions for initiating a process intended to result in the manufacture of methamphetamine and attempt to promote the manufacture of methamphetamine.  On appeal, the Petitioner contends that he received ineffective assistance of trial counsel based on counsel's failure (1) to adequately advise him regarding the admissibility of his prior convictions if he chose to testify and (2) to call a "material" witness for the defense.  Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Nathan Scott Luna (on appeal), Franklin, Tennessee; and Daniel James Barnes (at hearing), Sparta, Tennessee, for the appellant, Ernest Willard Dodd.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Lisa Zavogiannis, District Attorney General; and Thomas J. Miner, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

FACTUAL BACKGROUND

Following a jury trial, the Petitioner was convicted of initiating a process intended to result in the manufacture of methamphetamine and attempt to promote the manufacture of methamphetamine.  He received a sentence of nineteen years to be served at thirty-five percent.  A panel of this court upheld the Petitioner's convictions and sentence on direct

appeal.  See State v. Ernest Dodd, No. M2011-02259-CCA-R3-CD, 2013 WL 2296168, at *1 (Tenn. Crim. App. May 23, 2013), perm. app. denied (Tenn. Oct. 16, 2013).

As recounted by the court on direct appeal, the Petitioner's convictions arose from surveillance conducted by the Warren County Sheriff's Office at the apartment of Lance and Connie Vogel.  Dodd, 2013 WL 2296168, at *1.  During the surveillance, an investigator saw the Petitioner and Ronnie Minton leave the Vogels' apartment.  As the Petitioner left, another investigator approached the door of the apartment and "immediately smelled a strong odor of methamphetamine . . . ."  That investigator then spoke with the Petitioner, who consented to a search of his person, which proved fruitless.  However, the Petitioner admitted that he had eaten a bag of methamphetamine when he saw police officers approaching.  Id.

The Petitioner later gave a statement wherein he admitted to smoking methamphetamine but denied participating in the manufacture of the drug.  Dodd, 2013 WL 2296168, at *1.  He also admitted that he had spent the night before his arrest at the Vogels' apartment and that, sometime on the day of the arrest, he and Mr. Minton had gone to Wal-Mart to purchase lithium batteries.  Id.

At trial, Mr. Vogel confirmed that the Petitioner had been at the apartment on the night before his arrest.  Dodd, 2013 WL 2296168, at *2.  Both Mr. and Mrs. Vogel testified that the Petitioner participated in the manufacture of methamphetamine at their apartment.  Id.

Following his unsuccessful direct appeal, the Petitioner filed a timely pro se petition for post-conviction relief on March 6, 2014, alleging ineffective assistance of counsel and prosecutorial misconduct.  Following the appointment of counsel, an amended petition for post-conviction relief was filed on April 17, 2014.  The amended petition alleged that trial counsel was ineffective in the following ways: (1) failing to call "necessary witness" Ronnie Minton; (2) informing the Petitioner "that he could not testify"; (3) not filing a motion to suppress "evidence obtained from a potentially illegal search of co-[d]efendant Ronnie Minton's residence"; and (4) failing to adequately cross-examine Mr. and Mrs. Vogel regarding inconsistencies in their testimony.  The post-conviction court held an evidentiary hearing on October 22, 2014.[1]

At the evidentiary hearing, the Petitioner claimed that he did not testify at trial because he "was told that it would be better that [he] didn't and . . . [trial counsel] didn't want to put [him] on the stand."  According to the Petitioner, he wanted to testify, but

---

[1] We will recount only those portions of the evidentiary hearing that are relevant to the issues presented on appeal.

-2-

trial counsel advised him against it out of concern that the State would introduce the Petitioner's "past history" on cross-examination.

The Petitioner testified that on the night he was arrested, he was at the apartment of Lance and Connie Vogel and that he had been at the Vogels' for approximately one hour before his arrest. However, at trial, Mr. Vogel testified that the Petitioner had been at his home "all night." According to the Petitioner, he had been with Ronnie Minton prior to going to the Vogels', and Mr. Minton could have countered Mr. Vogel's testimony that the Petitioner had been at the apartment for much longer. However, Mr. Minton did not testify, and the Petitioner "was told that . . . [he] wouldn't like what Mr. Minton had to say."

On cross-examination, the Petitioner testified that trial counsel informed him that the State would "bring up [his] past convictions" if he chose to testify, "and the jury would find him guilty." The Petitioner testified that he "really . . . wanted to tell [his] part . . . so that they would know [his] side of it" but that he took counsel's advice not to testify because he was "scared." He admitted that the trial judge advised him of his right to testify on his own behalf, regardless of counsel's advice to the contrary, and that he understood it was ultimately his decision. He agreed that, "based on the information [he] had at the time, . . . it wasn't in [his] best interest to testify[.]"

Ronnie Minton testified that he was a co-defendant in the Petitioner's case. He stated that he was not present at the Petitioner's trial and did not witness any of the testimony. He recalled that, prior to his arrest, he and the Petitioner were at the Vogels' house "all night," although they left for "about an hour and went to Wal-Mart." He stated that the trip to Wal-Mart took place approximately four to five hours prior to his arrest. Mr. Minton testified that he and the Petitioner bought lithium batteries while at Wal-Mart, a precursor to the manufacture of methamphetamine.

Trial counsel testified that, prior to trial, he and Petitioner discussed potential witnesses, including Mr. Minton. Trial counsel spoke with Mr. Minton prior to trial, and he told trial counsel that his testimony "would be unfavorable" to the Petitioner. Specifically, trial counsel recalled that Mr. Minton told him that the Petitioner had been manufacturing methamphetamine on the night they were arrested; consequently, trial counsel decided not to call Mr. Minton as a witness. According to trial counsel, the Petitioner knew about and agreed with that decision.

Trial counsel remembered talking to the Petitioner about whether he should testify, and counsel expressed his concern that the State might impeach the Petitioner with his criminal history. Nevertheless, trial counsel told the Petitioner that the decision to testify was ultimately his.

The post-conviction court orally denied the petition for post-conviction relief. The court found that trial counsel made a reasonable decision not to call Mr. Minton as a witness, given that his testimony would not have been favorable. The court also found that trial counsel appropriately advised the Petitioner regarding his decision to testify in light of his previous criminal convictions. Further, the court noted that there was nothing to suggest that the Petitioner was "unduly influenced" in his decision not to testify or that his waiver of that right was not knowing. Rather, the court found that "[t]here [was] no real question that [the Petitioner] understood that he could testify if he wished to . . . ."

## ANALYSIS

On appeal, the Petitioner asserts that the post-conviction court "made an erroneous conclusion of law in determining [the Petitioner's] criminal history would have been admissible at trial." The Petitioner maintains that trial counsel was ineffective for advising him not to testify out of concern that his prior criminal history would be introduced to impeach him. The Petitioner also takes issue with the post-conviction court's conclusion that Mr. Minton's testimony would have been detrimental to the Petitioner's case and that trial counsel was, therefore, ineffective for not calling Mr. Minton as a witness. With respect to the Petitioner's first issue, the State requests that we treat that issue as waived, arguing that he raised this issue for the first time on appeal. The State further responds that the Petitioner failed to prove that trial counsel's decision not to call Mr. Minton was prejudicial.

Initially, we must discuss the Petitioner's untimely notice of appeal. The post-conviction court denied relief in an order entered on October 27, 2014. On January 16, 2015, the Petitioner's counsel filed a "Motion for Permission to Late-File Notice of Appeal," asserting that, due to his incarceration, the Petitioner had been "unable to communicate his desire for an appeal . . . until after more than [thirty] days had passed." The record is devoid of any order addressing the motion.

Tennessee Rule of Appellate Procedure 4(a) states that "[i]n an appeal as of right to the . . . Court of Criminal Appeals, the notice of appeal . . . shall be filed with and received by the clerk of the trial court within [thirty] days after the date of entry of the judgment appealed from." Because the post-conviction court denied relief on October 27, 2014, the notice of appeal was due on or before November 26. However, Rule 4(a) further states that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of judgment." The State has not asked this court to dismiss the Petitioner's appeal based on this procedural defect. Further, the Petitioner requested permission to file a late notice of appeal, and, although no order was filed in response to the motion, the case has

-4-

proceeded accordingly. Therefore, in the interest of justice, we will waive the timely filing of the notice of appeal and address the Petitioner's claims on the merits.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger, 279 S.W.3d at 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

First, we decline the State's request to waive the Petitioner's issue regarding the admissibility of his prior criminal history and his decision not to testify. Although the petition for relief does not specifically relate his decision about testifying with advice

from counsel that his prior history could be used to impeach him, it does allege that "trial counsel informed Petitioner that he could not testify." At the hearing, both the Petitioner and trial counsel were questioned about the admissibility of any prior convictions, and the post-conviction court's order denying relief states that "the Petitioner admit[ted] at the hearing that [trial counsel] advised against testifying because of the Petitioner's criminal history." Thus, we conclude that the issue was fairly raised by the Petitioner.

Turning now to the merits of the issue, the Petitioner argues that the post-conviction court's conclusion that his criminal history would have been admissible had he testified was error because there was no proof introduced that the State complied with Tennessee Rule of Evidence 609[2] regarding impeachment by criminal convictions.[3] The Petitioner maintains that trial counsel was deficient because "[he] should have been able to fully advise the [Petitioner] [about] whether the State had filed a notice of intent to use prior convictions for impeachment purposes, as well as the [t]rial [c]ourt's ruling" on the matter.

When denying the petition, the post-conviction court stated that "[t]here was no real question . . . that [the Petitioner's] prior convictions would have been brought up." As the Petitioner points out, there is no evidence in the post-conviction record that the State filed a notice of intent to impeach or that the trial court ruled on any such motion. Also, the Petitioner did not ask trial counsel if he recalled whether the State had filed a notice of intent to impeach. Therefore, from the record before us, it is impossible to ascertain whether the State filed a notice pursuant to Rule 609 or whether the trial court had a chance to rule on any such motion.[4] To the extent that the post-conviction court

---

[2] Rule 609 provides that a witness may be impeached by evidence of a criminal conviction if certain prerequisites are met. Especially pertinent to the Petitioner's argument is 609(a)(3), which provides:

> If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused.

[3] The record before us does not contain a recounting of the Petitioner's criminal history. However, from this court's opinion on direct appeal we glean the following facts: he was sentenced as a Range II, multiple offender; the trial court applied one enhancement factor—that the Petitioner had "prior criminal convictions in addition to those necessary to establish the appropriate range," see Tennessee Code Annotated section 40-35-114(a); and the court stated that the Petitioner's previous convictions were "simply atrocious." Dodd, 2013 WL 2296168, at *9. Further, the Petitioner does not contest the fact that he had criminal convictions which could have been used to impeach him.

[4] Although this court may take judicial notice of the record on direct appeal, in the absence of a direct request, our decision to take judicial notice is discretionary. See State v. Lawson, 291 S.W.3d 864, 869

-6-

made a legal conclusion that previous convictions would have been per se admissible had the Petitioner testified, that conclusion is not supported by the record. However, that does not conclude our inquiry.

Regardless of whether the Petitioner's prior convictions would have been admissible pursuant to Rule 609, the possibility still existed that evidence of the prior convictions may have been admitted into evidence had the Petitioner chosen to testify at trial. See Michael Braxton v. State, No. M2006-01894-CCA-R3-PC, 2007 WL 1988141, at *4 (Tenn. Crim. App. July 10, 2007). In State v. Kendricks, 947 S.W.2d 875, 883 (Tenn. Crim. App. 1996), this court held that "irrespective of admissibility under Rule 609, a conviction may be used to contradict a witness who 'opens the door' and testifies on direct examination that he or she has never been convicted of a crime, or to counter some other facet of direct testimony." Therefore, even if the State did not file a notice of intent to impeach, counsel's advice to the Petitioner that his prior convictions might have been introduced were he to testify was not without legal merit. The trial court specifically questioned the Petitioner regarding his decision to not testify, and the Petitioner indicated that he had been involved in the decision-making process, that he understood the decision was his to make, and that he had chosen to not testify. We conclude that trial counsel properly advised the Petitioner of his right to testify along with the potential perils that might arise were he to exercise that right. The Petitioner's argument is without merit.

Next, the Petitioner contends that trial counsel was ineffective for not calling Mr. Minton as a defense witness. The Petitioner also asserts that the post-conviction court "did not make the proper assessment in determining whether [Mr.] Minton was a material witness" and did not determine whether his testimony would have been admissible at trial. Also, the Petitioner asserts that the post-conviction court's determination that Mr. Minton's testimony would have been unfavorable to the defense was in error.

When a petitioner presents a witness as the post-conviction hearing that he asserts should have testified at trial, the post-conviction court must determine whether the witness's testimony would have been admissible at trial and material to the defense. Pylant v. State, 263 S.W.3d 854, 869 (Tenn. 2008).

> If the post-conviction court determines that the proffered testimony would not have been admissible at trial or that, even if admissible, it would not have materially aided the petitioner's defense at trial, the post-conviction

_____

(Tenn. 2009). The Petitioner has not asked us to take judicial notice of the record from his direct appeal, and it is the Petitioner's duty to provide an adequate record on appeal. Tenn. R. App. P. 24(a). Regardless, we conclude that this issue can be resolved without reference to the record from the Petitioner's direct appeal.

court is justified in finding that trial counsel was not deficient in failing to call that witness at trial.

Id. We find no flaw in the post-conviction court's assessment of the Petitioner's claim. The Petitioner apparently draws a distinction between a determination that a witness's testimony would be "material" and that it would be "favorable." However, we find no such distinction: the post-conviction court's finding that Mr. Minton's testimony would not have been favorable to the defense equates to a determination that the testimony would not have "materially aided" the defense. Based on this finding, there was no need to explicitly assess the admissibility of Mr. Minton's testimony. See id. Therefore, we cannot agree that the post-conviction court's analysis was deficient in this respect.

Furthermore, our review leads us to agree with the post-conviction court's conclusion. At the evidentiary hearing, trial counsel testified that he spoke with Mr. Minton prior to trial and that Mr. Minton informed him that the Petitioner had been cooking methamphetamine at the Vogels' apartment on the night in question. Understandably, trial counsel concluded that this testimony would be detrimental to the Petitioner's case. The post-conviction court accredited trial counsel's testimony that he spoke with the Petitioner about not calling Mr. Minton and that the Petitioner agreed with that trial strategy. Mr. Minton testified at the hearing that the Petitioner had been at the Vogels' apartment the entire night before and day of his arrest, except for an approximately one-hour period when the men went to Wal-Mart and bought lithium batteries, a precursor for the manufacture of methamphetamine. That testimony directly undermines the Petitioner's assertion at the evidentiary hearing that Mr. Minton's testimony would have called into question Mr. Vogel's testimony that the Petitioner was at the Vogels' apartment all night. The Petitioner has pointed to nothing in Mr. Minton's evidentiary hearing testimony that would have been favorable to the defense at trial. Accordingly, the Petitioner has not proven either deficient performance or prejudice and is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-8-